**In the Matter of Harold POWELL, member of the Board of Assessment of Kent County.**

Superior Court of Delaware.

Kent.

May 31, 1967.

James H. Hughes, III, Dover, for appellant.

Brown & Brown, Dover, for appellee.

## OPINION

O'HORA, Judge.

On January 17, 1967, the Levy Court in and for Kent County, (hereinafter referred to as "Levy Court"), after a hearing held pursuant to 9 Del.Code § 8210, removed Harold W. Powell as a member of the Board of Assessment of Kent County, (hereinafter referred to as the "Board"),

on the ground that Powell was not eligible to serve in that office when he was originally appointed in January, 1966, because he did not meet the residential requirements of 9 Del.Code § 8202(e). Powell appeals from the decision of the Levy Court.

Membership of the Board is governed by 9 Del.Code § 8202 which reads, as follows:

"§ 8202. Board of Assessment for Kent County

(a) There shall be a Board of Assessment for Kent County.

(b) The Board shall consist of three members to be appointed by the Levy Court of Kent County.

(c) The term of office of each member is four years commencing on the second Tuesday in January next after his appointment.

(d) All three members of the Board shall be appointed by the Levy Court every four years in the year next after the year in which the Governor is elected.

(e) The members shall be freeholders, qualified voters of Kent County, no two of whom shall be residents of the same Senatorial District. All members shall be chosen from the two principal political parties, and not more than two shall be of the same political faith."

On January 12, 1965, the second Tuesday in January following a year in which a Governor was elected, the Levy Court appointed Edgar M. Kates and William J. Paskey members of the Board. On January 19, 1965, the Levy Court appointed Franklin T. English as the third member of the Board, and provided that his appointment should be retroactive to January 12, 1965.

On December 26, 1965, Kates died and on January 6, 1966, the Levy Court appointed Powell to fill the vacancy created, pursuant to such authority provided by 9 Del. Code § 8204.

The fundamental issue involved in this appeal is centered on the significance of the language found in 9 Del.Code § 8202(e) which states, relative to the three members of the Board, that "no two of whom shall be residents of the same Senatorial District". Kates at the time of his appointment was a resident of the thirteenth Senatorial District, Paskey of the fifteenth Senatorial District, and English of the thirteenth Senatorial District, as those districts were established by the Reapportionment Acts of 1964 *. A conflict was thus created, both Kates and English coming from the same Senatorial District.

Powell, the appellant and the successor to Kates, contends, nevertheless, that he is rightfully a member of the Board. Appellant's contentions are based upon two alternative theories; (1) that 9 Del.Code § 8202(e) should be interpreted as referring to Senatorial Districts existing at the time the Act creating 9 Del.Code § 8202(e) was first enacted in 1920, namely, the Senatorial Districts set forth in the Delaware Constitution of 1897, which, if applied, would find all three 1965 appointees resident in separate Senatorial Districts, or, (2) if the 1964 Senatorial Districts apply English, whose appointment followed in time the appointment of Paskey, is the ineligible or illegally appointed member, not himself.

■ Appellant's first contention is based upon a well recognized principle of statutory construction which holds, in effect, that a statute which includes within it, or adopts as a part of it, the provisions of another statute or law, is not itself changed by an amendment to or change in the included or adopted law. Perkins v. Winslow, 3 W.W.Harr. 188, 133 A. 235 (Super. Ct.1926); 168 A.L.R. 627; Sutherland, Statutory Construction, 3rd Ed., Vol. 2,

---

* 54 Del.Laws, Ch. 360, effective 7/13/64; amended by 54 Del.Laws, Ch. 361, effective 7/13/64.

§ 5208. In this instance appellant urges that 9 Del.Code § 8202(e) when first enacted in 1920, and as codified in the Revised Code of 1935 and the Delaware Code of 1953, in mentioning Senatorial Districts was referring to such Districts as were then constituted under the 1897 Constitution. It would follow, therefore, that 9 Del.Code § 8202(e) was not changed by the adoption of different Senatorial Districts in the Reapportionment Acts of 1964.

The difficulty with appellant's thesis is that he encompasses too much in applying the construction principle involved. This principle is confined to statutes which clearly refer to the adopted law, as was true in the Perkins case. At most 9 Del.Code § 8202(e) referred to the Senatorial Districts, found in the 1897 Constitution, in a general way. In such instances it is the general rule to interpret the basic statute as one which adopts or includes the law on the subject as of the time it is invoked. 50 Am.Jur., Statutes, § 39; 82 C.J.S. Statutes § 370, p. 848. By such interpretation the basic statute, 9 Del.Code § 8202(e) here, would refer to the Senatorial Districts existing at any given moment, even though they be amended or changed from time to time.

This exception to the general rule is a sensible one. If the Legislature in passing upon a basic statute desired to restrict its application by some other law as it then existed it would be a simple matter to make a specific reference to that other law. Absent such a reference it borders upon pure conjecture to say, often years later, that a Legislature intended a statute to remain unchanged even if an adopted statute itself was later changed.

The statute in question here, 9 Del.Code § 8202(e), being no more than a general reference statute, it follows that any amendment to the general law affecting Senatorial Districts would, in turn, affect the application of 9 Del.Code § 8202(e). When in January, 1965, the Levy Court appointed both Kates and English from the thirteenth Senatorial District, it was not complying with the residential requirements of 9 Del. Code § 8202(e).

■ Both Kates and English being from the same Senatorial District, it follows that one of them was ineligible for appointment. While both appointments were to take effect as of January 12, 1965, the English appointment was in fact made on January 19, 1965, or subsequent to the Kates appointment. As between the two, one of whom had to be ineligible, it follows that the first appointment in time, that of Kates, was the valid appointment.

We are then led to examine the effect of the fact that English, originally ineligible for appointment, nevertheless, assumed the duties and responsibilities of the office and thereafter became eligible for the office at the time of Kates' death. From the viewpoint of English it becomes a question of the effect of the removal, during the term of his membership on the Board, of a disqualification which existed at and before commencement of his term. In similar situations there exists a split of authority in other jurisdictions, with the problem being one of first impression in this State. For a collection of holdings on the subject see 88 A.L.R. 831 and 143 A.L.R. 1031.

■ An examination of the many holdings would seem to indicate a general pattern that where the office in question is an elective one, a disqualification eliminated after taking office does not cure the defect so as to validate the retention of the office. A more liberal interpretation is usually found when the problem involves an appointive office.

The most nearly analogous situation to the case at bar is found in State ex rel. Chealander v. Carroll, 57 Wash. 202, 106 P. 748 (1910). That case involved a person appointed as a civil service commissioner who, at the time of appointment, did not meet the residential requirements.

While, nevertheless, serving in that post, he did in time meet the requirements. Later, he sought to run for an elective office and claimed that he was not disqualified from running as civil service commissioner since he had not become such validly. The Court in holding against the prospective office seeker upheld the legality of his appointment in the following language:

"An appointment to an office is continuing in its nature; that is to say, it is in the nature of an offer, and is good until it is expressly or impliedly withdrawn. Hence, in this case, even though the relator were not qualified to accept the office tendered him when first made, he accepted it as far as he was able, and continued in the performance of its duties until after his disqualification was removed. If, therefore, the appointment did not legally take effect when first made and accepted, it became legally effective when relator continued in the performance of the duties of the office after his disqualification was removed."

The conclusions reached in the above case seem equally valid here. English having served as a de facto member of the Board, became a full de jure member upon the death of Kates. English, having thus become a valid member of the Board, and coming from the thirteenth Senatorial District, the appointment of Powell, from the same District, was an invalid appointment. It was, consequentially, proper for the Levy Court to have removed Powell from the office and his appeal from that action must be rejected.

Finally, it should be noted, appellant seeks a reversal of the Levy Court decision to remove him on the grounds that he did not receive proper notice of the hearing held by Levy Court. However, absent any showing of prejudice to him, the Court feels there can be no merit in this complaint and does not attempt to decide this issue.

For the reasons stated the decision of the Levy Court is affirmed and the appeal dismissed.

It is so ordered.